**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANETTE MCNEIL,** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 20-1775** |
| | : | |
| **PENN WAREHOUSING AND** | : | |
| **DISTRIBUTION, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**Goldberg, J.**                                                                                             **May 13, 2021**

**MEMORANDUM OPINION**

Plaintiff Shanette McNeil has brought sixteen claims against her employer Defendant Penn Warehousing & Distribution, Inc. for harassment, discrimination, retaliation, and retaliatory harassment on the basis of race pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1968 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"); discrimination, failure to accommodate, retaliation, and retaliatory harassment on the basis of pregnancy pursuant to Title VII, the Pregnancy Discrimination Act, and the PHRA; and retaliation and retaliatory harassment pursuant to the Family and Medical Leave Act ("FMLA").

Plaintiff alleges the following facts regarding Defendant's racially-motivated conduct, (Am. Compl., ¶¶ 11, 16–36, 60–64):

- Plaintiff is an African American woman, currently employed by Defendant.

- In January 2019, Plaintiff's co-worker, Brianna Sireci, called her a racial slur (the "n-word") in front of her manager, Josh Pinson. Pinson told Sireci that her language was inappropriate. Plaintiff did not report this incident because she was not part of the union yet and did not want to cause any problems.

1

- Later that day, Floor Supervisor Aleah Miller, approached Plaintiff and asked her what had happened with Sireci. Plaintiff told Miller that Sireci had referred to her as an n-word. Miller stated that she would handle the matter.

- Later that day, Plaintiff walked by Sireci's grandmother, Donna Errigo, who also works for Defendant. Plaintiff heard Errigo state, "I don't understand, they call each other [n-word] all of the time," to someone on the phone.

- On several occasions after that day, Sireci and Errigo both called Plaintiff a "bitch" several times as she walked by them. Sireci also began bragging about getting away with calling Plaintiff an n-word.

- After several months of continued harassment, Plaintiff reported Sireci and Errigo's conduct to General Foreman Donna Hamilton. Hamilton told Plaintiff that she should excuse Sireci's conduct because Sireci had memory issues.

- Plaintiff was dissatisfied with Hamilton's response, so she reported Sireci and Errigo's harassment to Office Administrator John Jones. Plaintiff followed up by submitting a written statement to Jones.

- In July 2019, after Plaintiff reported Sireci and Errigo's conduct to Jones, Sireci and Errigo followed Plaintiff into the parking lot and, when Plaintiff was within earshot, Errico loudly stated that she "hated people from certain backgrounds" but did not want to say the n-word and "get another complaint."

- As Defendant had failed to address the harassment that Plaintiff previously reported, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 6, 2019.

- In October of 2019, Plaintiff was assigned to work with Sireci twice. Sireci spent both days rolling her eyes and snickering at Plaintiff. Plaintiff reported Sireci's behavior to Hamilton and Jones. On one occasion, Plaintiff and Sireci were separated, and on the other occasion, Plaintiff was told not to worry about it and was left in the assignment to endure Sireci's behavior. Errigo and Sireci also continued to harass Plaintiff despite allegedly being advised not to speak with her.

Plaintiff alleges the following additional facts regarding Defendant's conduct motivated by her pregnancy, (Id. at ¶¶ 37–38, 48–59):

- Plaintiff learned that she had a high-risk pregnancy in August 2019 and informed Defendant.

- When Plaintiff was visibly pregnant, Errigo purposefully bumped into her while they passed each other walking through the restroom. Plaintiff reported this harassment to Jones.

- In September 2019, Plaintiff was assigned to handle tire pressure, which required her to squat and release pressure from tires. Plaintiff asked why she was assigned to handle tire pressure because she had never been assigned that task and had not been trained on how to do that job.

- Manager Alexis Cantwell showed Plaintiff how to handle tire pressure, and, while watching Plaintiff squat to relieve air from the tire, asked how far along her pregnancy was.

- The air released from the tires made Plaintiff dizzy, which she reported to Union Representative, James Mack.

- Another female employee who was Caucasian was pregnant and was never assigned to handle tire pressure and was also permitted to take naps during the day, which Plaintiff was not permitted to do. The Caucasian pregnant employee had never complained about racial harassment or retaliation.[1]

Plaintiff also asserts that in August 2019, she applied for FMLA leave due to her high-risk pregnancy and, again, in September or October 2019, due to her son's medical conditions, including asthma, allergies, and eczema. (Id. at ¶¶ 41–42.)

Plaintiff claims that before filing complaints with the EEOC, reporting her co-worker's alleged harassment to Defendant, and applying for FMLA leave, Plaintiff had "never been disciplined by Defendant, either verbally or in writing," and had "never been called into the office for contemplation of discipline." (Id. at ¶¶ 43–44.) Plaintiff alleges that after engaging in these protected activities, Defendant "began issuing verbal and written discipline to Plaintiff, including for absences related to her medical needs," and "began calling her into the office regularly in contemplation of issuing discipline, including for absences related to her medical needs." (Id. at ¶¶ 45–46.) Plaintiff also asserts that on one occasion, Defendant called her into the office and asked "if she still wanted her job." (Id. at ¶ 47.)

---

[1]     Plaintiff relies on this fact in support of her race-based claims as well.

Based on these allegations, Plaintiff filed claims with the EEOC and Pennsylvania Human Relations Commission ("PHRC") on August 6, 2019 and September 30, 2019.[2] Plaintiff amended her second charge on February 10, 2020. On February 11, 2020, the EEOC issued notice of Plaintiff's right to sue. On April 3, 2020, Plaintiff filed the original Complaint and, thereafter, an amended complaint on August 6, 2020. Defendant now seeks to dismiss all claims in the Amended Complaint, except Plaintiff's hostile work environment claim (Count I).

For the following reasons, I will grant in part and deny in part Defendant's motion.

## I.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Conclusory allegations do not suffice. Id. To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662

---

[2]     Plaintiff identifies two different dates in the Amended Complaint on which she filed the second EEOC Charge. Plaintiff states that she dual-filed claims with the EEOC and PHRC first on August 6, 2019 and then on October 7, 2019. (Am. Compl. ¶ 4.) In a subsequent Paragraph, Plaintiff states that the second EEOC Charge was filed on September 30, 2019. (Id. at ¶ 9.) Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, I will rely on the earlier date of filing (September 30, 2019) for purposes of this motion.

F.3d 212, 221 (3d Cir. 2011) (internal quotation marks omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## II. ANALYSIS

### A. Exhaustion of PHRA Claims

Defendant first seeks to dismiss Plaintiff's PHRA claims (Counts X, XI, XII, XIII, and XIV), arguing that Plaintiff has failed to exhaust her administrative remedies. Defendant contends that at the time the original Complaint was filed in April 2020, Plaintiff had failed to give the PHRC one year to investigate the administrative complaint as required by 41 Pa. Cons. Stat. § 962(c). Courts in the Third Circuit have adopted a flexible approach to PHRA exhaustion (1) by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during litigation, see, e.g., Wardlaw v. City of Phila., No. 09-3981, 2011 WL1044936, at *3 (E.D. Pa. Mar. 21, 2011), or (2) by dismissing a plaintiff's PHRA claims without prejudice and granting leave to amend the complaint following the one-year anniversary of the date on which the PHRC was notified of the plaintiff's complaint. See, e.g., McGovern v. Jack D's, Inc., No. 03-5547, 2004 WL 228667, at *8 (E.D. Pa. Feb. 3, 2004). Here, the one-year deadline applicable to Plaintiff's PHRA claims has expired during litigation, i.e., on February 10, 2021. Thus, on this issue, Defendant's motion is denied.

**B. Timeliness of Title VII Claims**

Defendant next argues that Plaintiff's Title VII claims (Counts V, VI, VII, VIII, and IX) must be dismissed as untimely because Plaintiff did not bring such claims within ninety days of receiving a right to sue letter from the EEOC. Defendant asserts that the first time Plaintiff brought such claims was in the Amended Complaint, almost 180 days after Plaintiff received notice of her right to sue.

While Plaintiff's Title VII claims were brought beyond the ninety-day limit, I conclude that they relate back to the timing of the original Complaint, which was filed within the ninety-day period. See Chan v. Barbour, Inc., 263 F. Supp. 3d 521, 524–5 (E.D. Pa. 2017). Pursuant to Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The original Complaint and the Amended Complaint share almost identical facts. I find that Defendant had fair notice of Plaintiff's Title VII claims based on those facts. Plaintiff's Title VII claims are also very similar to the harassment, retaliation, and discrimination claims brought under 42 U.S.C. § 1981 and state law in the original Complaint. Therefore, based on the above precedent, Defendant's motion to dismiss the Title VII claims as untimely is denied.

**C. Punitive Damages under the PHRA**

Defendant argues that Plaintiff's claims for punitive damages under the PHRA must be dismissed because such damages are not available under the statute. Plaintiff agrees. All claims for punitive damages in Counts X, XI, XII, XIII, and XIV are thus dismissed.

## D. Adverse Employment Action

Defendant next asserts that Plaintiff's race and pregnancy discrimination claims (Counts II, VI, VII, XI, and XIV) fail because Plaintiff did not suffer an adverse employment action. To prevail on a claim of discrimination, a plaintiff must show that she suffered an adverse employment action. See, e.g., Barker v. Boeing Co., 21 F. Supp. 3d 417, 422 (E.D. Pa. 2014) (citing Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). "An 'adverse employment action' is an action that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jajua v. Diakon Lutheran Social Ministries, 299 F. Supp. 3d 645, 653 (E.D. Pa. 2018) (internal quotation marks omitted) (citing Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)). "Put another way, an adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, or a decision causing a significant change in benefits." Barnes v. Nationwide Mut. Ins. Co., 11 F. Supp. 3d 477, 481 (E.D. Pa. 2014).

Here, Plaintiff relies on vague references in the Amended Complaint to Defendant allegedly issuing her verbal and written discipline and calling her into the office regularly in contemplation of issuing discipline after Plaintiff allegedly engaged in protected activity. Apart from an allegation that some unknown portion of the unknown number of disciplines issued were for absences related to her medical needs, there is no factual explanation of (1) the circumstances surrounding the discipline, (2) whether the discipline was formal/permanent or merely a temporary warning, (3) whether the discipline was included in her personnel file, (4) whether the discipline was part of a progressive disciplinary policy, (5) whether the discipline resulted in a negative performance review or some sort of corrective action, or (6) whether Plaintiff's hours, job duties, or pay, were affected by being issued discipline. As pled, Plaintiff has not plausibly demonstrated

that this "discipline" represented a significant change in her employment status or was serious and tangible enough to alter the terms and conditions of her employment.

The Third Circuit and courts within it have been hesitant to find adverse employment actions absent a showing of harm or injury. For example, in Morrison v. Carpenter Tech. Corp., 193 F. App'x 148 (3d Cir. 2006), the Third Circuit affirmed the district court's finding that the plaintiff, who received a "Corrective Performance Review" for disruptive behavior associated with making a discrimination complaint, had not suffered an adverse employment action because he did not "identify, much less establish, any harm or injury" that resulted from the review, and the review did not result in economic loss, change to the terms of his employment, or impact on his professional advancement. Id. at 154.[3]

Plaintiff cites to two cases in support of the Amended Complaint's sufficiency. In the first case, Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001), the Third Circuit addressed whether written reprimands issued to the plaintiff were considered an adverse employment action. Id. at

---

[3] See also Deans v. Kennedy House, Inc., 587 F. App'x 731, 734 (3d Cir. 2014) (holding that oral and written warnings and docked pay did not constitute adverse employment actions); Atkinson v. N. Jersey Developmental, 453 F. App'x 262, 263, 266 (3d Cir. 2011) (finding no adverse employment action when supervisor gave the plaintiff a low performance review, issued her a warning for arriving late, denied her vacation requests, adjusted her duties, and got into a heated argument with her); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) (holding that oral reprimands and derogatory comments do not rise to the level of an adverse employment action), abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Hair v. Fayette Cnty of Pa., 265 F. Supp. 3d 544, 567 (W.D. Pa. 2017) (holding that issuance of written warning for violating County policy and unprofessional behavior did not constitute an adverse employment action); McKinnon v. Gonzales, 642 F. Supp. 2d 410, 429 (D.N.J. 2009) (holding that warden's comments that plaintiff was skating on thin ice and that he was either with management or against them were not materially adverse acts that were actionable as part of a Title VII retaliation claim); Nagle v. RMA, The Risk Mgmt. Assn., 513 F. Supp. 2d 383, 391–92 (E.D. Pa. 2007) (holding that meeting wherein employer reprimanded plaintiff for sixty-five minutes, gave a negative review, and threatened plaintiff with loss of employment was not material adverse employment action because the review did not result in economic loss or any change to the terms of his employment, and there was no evidence regarding the significance of a single such review on his professional advancement).

430. The district court had found that the written reprimands rose to the level serious enough to trigger employer liability because of their "presumed" effect on compensation, terms, conditions, or privileges of the plaintiff's employment, but the Third Circuit disagreed. Id. at 431. "[The plaintiff] has failed to establish how these two reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions." Id. (finding that the plaintiff's own deposition testimony indicated that he was not demoted in title, did not have his work schedule changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands).

In the second case, Eubanks v. Sunoco Logistics Partners, LP, No. 12-1741, 2012 WL 3866961, at *3 (E.D. Pa. Sept. 6, 2012), the court found that an alleged written warning issued to the plaintiff was sufficient to establish an adverse employment action in order to survive dismissal. But Eubanks, which is not binding precedent, is distinguishable for two reasons.

First, unlike here, the plaintiff in Eubanks pled, in detail, the factual circumstances surrounding the written warning and its contents. The warning was allegedly issued "because two company laptop computers were stolen from a company car that was unlocked and parked in front of [the plaintiff's] home" and the warning "referenced two prior incidents . . . in which a company vehicle was struck and damaged while parked in front of [the plaintiff's] home." Id. at *1. The warning cited "the theft and the collisions as examples of [the plaintiff's] 'irresponsibility.'" Id. Also, unlike here, the plaintiff pled the consequences of the written warning: "as a result of the warning, [the plaintiff] lost the privilege of parking his company vehicle at his home" and "the warning letter was placed in [the plaintiff's] personnel file." Id. It is on the basis of these facts that the court found it to be "entirely plausible that the filed reprimand could sufficiently impact the terms of [the plaintiff's] employment to constitute an adverse employment action." Id. at *3.

No such facts are pled here. Thus, without more, Plaintiff fails to plausibly plead that the verbal and written discipline constituted an adverse employment action.

Plaintiff's allegations regarding being called into the office in contemplation of discipline are similarly deficient. "The mere initiation of investigation [into discipline] is not an adverse employment action when it has no effect on the plaintiff's employment." Tomaszewski v. City of Philadelphia, No. 17-4675, 2020 WL 2512789, at *13 (E.D. Pa. May 14, 2020) (internal quotation omitted); Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 549 (E.D. Pa. 2013) (finding that employer's investigation into plaintiff's alleged work rule violation or vacation time violation was not an adverse employment event where employee failed to demonstrate material injury or harm from investigation or initiation of discipline). Here, there are no facts alleged in the Amended Complaint regarding what, if anything, resulted from Plaintiff's "regular" visits to the office.

Plaintiff also alleges that she was given an unfavorable work assignment after engaging in protected activity. She states that she was "assigned to handle tire pressure, which required her to squat and release pressure from tires." Plaintiff allegedly asked why she was assigned to handle tire pressure because she had never been assigned that task and had not been trained on how to do that job. Plaintiff states that a manager then showed her to how to do it. She said the air released from the tires made her dizzy, and she reported it to the union representative.

This alleged adverse employment action is also insufficiently pled. Plaintiff fails to plead facts to plausibly support that the assignment to handle tire pressure was serious and tangible enough to alter her compensation, terms, conditions, or privileges of employment. There are no facts alleged regarding (1) how long Plaintiff was assigned to handle tire pressure, whether it was a "one-off" assignment or permanent, (2) if the tire pressure assignment was thought of as a demotion or a less desirable position than the assignment she had before it (Plaintiff does not allege

what position she currently holds with Defendant, what her typical job duties were before being assigned to handle tire pressure, and whether her typical job duties were objectively better than handling tire pressure) and (3) if the tire pressure assignment resulted in a change in pay, hours, or some other benefit or condition of employment. All of these facts are not necessarily required to plausibly show that a different job assignment or task is an adverse employment action but, without any of them, the Amended Complaint is deficient.[4] Consequently, Counts II, VI, VII, XI, and XIV will be dismissed.

### E. Discriminatory Intent Based on Race

I also find that Plaintiff has failed to plausibly plead that Defendant intentionally discriminated against her based on her race. To prevail on a claim of race discrimination under Title VII or § 1981, a plaintiff must show that the adverse employment action that she suffered was under circumstances that would give rise to an inference of intentional discrimination on the basis of race. See Barker, 21 F. Supp. 3d at 422 (citing Makky, 541 F.3d at 214). "The most common evidence of circumstances suggesting discrimination is evidence of disparate treatment, whereby a plaintiff shows that [she] was treated less favorably than similarly situated employees of a different race." Id. at 422-423 (internal quotation marks omitted) (citing Doe v. C.A.R.S Protection Plus, Inc., 527 F.3d 358, 366 (3d Cir. 2008)).

This comparator evidence often requires proof that "the relevant aspects to the plaintiff's employment situation are nearly identical to those of the co-workers that plaintiff alleges were treated more favorably," which includes a showing that "the two employees dealt with the same

---

[4]    Plaintiff also appears to claim that Defendant's assigning her to work with Sireci twice after reporting Sireci's allegedly harassing behavior was considered an adverse employment action. For reasons similar to those discussed in Section III.D, I find that being assigned to work with Sireci twice does not plausibly demonstrate a significant change in Plaintiff's employment status or was serious and tangible enough to alter the terms and conditions of her employment.

supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Collins v. Kimberly-Clark Pa., LLC, 247 F.Supp.3d 571, 589-90 (E.D. Pa. 2017) (internal quotation marks omitted). "To that end, a plaintiff must show that the other employee's acts were of comparable seriousness to his own infraction." Id. at 590 (internal quotation marks omitted).

Here, even assuming that Plaintiff has pled a qualifying adverse employment action, she still has to prove that this adverse action gives rise to an inference of intentional discrimination based on her race. Plaintiff appears to allege in support of this inference that another female, pregnant employee, who is Caucasian, was never assigned to handle tire pressure and was permitted to take naps during the day, which Plaintiff was not permitted to do. Yet, Plaintiff has not pled that this other employee dealt with the same supervisor and was subject to the same standards as Plaintiff. Moreover, the Amended Complaint provides no explanation regarding the conduct for which Plaintiff was allegedly disciplined (except to state that some unknown portion of the disciplines were for absences due to medical needs) and whether this other Caucasian employee engaged in the same conduct and was treated differently. Plaintiff pleads only conduct that the alleged comparator did not engage in: "the Caucasian pregnant employee had never complained about racial harassment or retaliation." (Am. Compl., ¶ 59.) Therefore, Plaintiff's race discrimination claim fails to plausibly plead an inference of intentional discrimination.

### F. Discriminatory Intent Based on Pregnancy

Plaintiff has also failed to plausibly plead that Defendant intentionally discriminated against her based on her pregnancy. In order to establish a claim for pregnancy discrimination, in addition to proving an adverse employment action, Plaintiff must plausibly show some nexus

between her pregnancy and the adverse employment action. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 366 (3d Cir. 2008). "The evidence most often used to establish this nexus is that of disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class." Id. Although the Third Circuit has held that the Pregnancy Discrimination Act does not require that employers treat pregnant employees better than other temporarily disabled employees, the Act does require that "employers treat pregnant employees no worse." Id.

Here, Plaintiff alleges that she was assigned to handle tire pressure while pregnant and that another pregnant employee was never assigned to handle that work and was also permitted to take naps during the day. Yet, the Pregnancy Discrimination Act requires that employers treat pregnant employees no worse than "other temporarily disabled" employees, not other pregnant employees. See id. ("Comparing Doe to other non-pregnant workers who were temporarily disabled, we conclude that Doe was provided sufficient evidence to satisfy the fourth element of the *prima facie* case . . . ."). Treating one pregnant employee better than another pregnant employee does not show that an employer discriminates on the basis of pregnancy, since both employees are in the same protected class. Plaintiff has pled no facts regarding a similarly situated non-pregnant but other temporarily disabled employee being treated more favorably than her. Therefore, she has failed to plausibly plead a nexus between the alleged adverse employment action and her pregnancy.[5]

---

[5]     Plaintiff also appears to allege a failure to accommodate claim based on her pregnancy. There is no allegation in the Amended Complaint that Plaintiff requested an accommodation from Defendant based on her pregnancy. Plaintiff seemingly asks me to accept that by notifying Defendant that her pregnancy was high risk, Defendant was on notice that Plaintiff "may have required an accommodation related to her pregnancy that would have excused her from [the tire pressure] assignment." (Pl.'s Response at 14 (emphasis added).) Employers cannot be held liable for failure to accommodate a pregnant employee because the employer knew about the employee's condition and, therefore, was on notice that an accommodation might be requested. Without an allegation that an accommodation was specifically requested from Defendant and Defendant did

### G. Retaliation Based on Race

Defendant also seeks to dismiss Plaintiff's retaliation claims based on race arguing that Plaintiff has failed to sufficiently plead an adverse employment action and a causal link between the adverse employment action and her protected activity. Until 2006, the Third Circuit required those claiming unlawful retaliation under Title VII, like those claiming discrimination, to show an adverse employment action that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006). "In Burlington Northern, [the Supreme Court of the United States] . . . found that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes and . . . that the anti-retaliation provision . . . is not limited to discriminatory actions that affect terms and conditions of employment." Id. (internal quotation marks omitted) (citations omitted). Therefore, a plaintiff claiming retaliation under Title VII must show that "a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotation marks omitted).

Plaintiff details several instances in which co-workers made racially discriminatory remarks to her, which she reported to management. When Defendant allegedly failed to address the harassment, Plaintiff filed an EEOC Charge. Plaintiff claims that, after the Charge was filed, she was issued verbal and written discipline and was called into the office regularly in contemplation of discipline, when before filing the Charge she had never been disciplined.

---

not accommodate her, Plaintiff's claim fails. See, e.g., Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1354 (2015).

Defendant argues that, because Plaintiff filed a second Charge of discrimination with the EEOC, it is clear that Plaintiff's being issued discipline was not materially adverse enough to dissuade Plaintiff from filing or supporting a charge of discrimination.

The retaliation standard does not require Plaintiff herself to be dissuaded, but rather that a reasonable person would be dissuaded under the circumstances. A reasonable employee could plausibly be dissuaded from filing or supporting a charge of discrimination if she (1) was subject to continuing racially harassing comments from her co-workers; (2) reported the harassment to management but management took no action to address it; (3) filed an EEOC Charge for race discrimination; and (4) then was issued discipline when she had never been disciplined before the Charge was filed.

Regarding the causal link between the adverse employment action and Plaintiff's reporting the racial harassment to Defendant and filing an EEOC Charge for race discrimination, Plaintiff has plausibly pled this element of the claim as well. The allegedly harassing remarks were obviously racially charged (she was allegedly called the n-word). Plaintiff engaged in protected activity by reporting the conduct and filing an EEOC Charge in August 2019, soon after, around September or October 2019, Plaintiff claims she was subjected to repeated inquiries regarding disciplinary issues and issued written and verbal discipline, when before filing her EEOC Charge she had allegedly never been disciplined.

Thus, Defendant's motion is denied regarding Counts III, IV, VIII, IX, XII, and XIII to the extent those claims are based on race.[6]

---

[6] Plaintiff also appears to allege that being assigned twice to work with Sireci, one of the co-workers who had called her the n-word, was retaliatory harassment with regard to her race. Plaintiff claims that by reporting racial harassment to Defendant and filing EEOC Charges, she was subject to retaliatory harassment creating a hostile work environment that had an adverse effect on her employment. Because this claim is, at its root, one of retaliation, in order to establish

## H. Retaliation Based on Pregnancy

Defendant also argues that Plaintiff has failed to sufficiently plead claims for retaliation based on her pregnancy. Plaintiff alleges that, when visibly pregnant, a co-worker purposefully bumped into her while they passed each other walking through the restroom. Plaintiff reported this harassment, after which she claimed she was assigned to handle tire pressure, a job for which she was not previously trained and had never been assigned before.

Unlike her race retaliation claim, I find that Plaintiff fails to plausibly plead an adverse employment action in support of a pregnancy retaliation claim. See Moore, 461 F.3d at 342. An unpleasant work assignment, even if it falls within the same job description, could be considered forbidden retaliation but is "not automatically actionable." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 70–71 (2006). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at 71 (internal quotation marks omitted).

Here, Plaintiff alleges that she was not trained to handle tire pressure, she had never been assigned it before, the task required her to squat, and the air released from the tires made her dizzy. I find that these allegations, on their own, are insufficient to plausibly support that being assigned

___

a *prima facie* case of retaliatory harassment, Plaintiff must show that: (1) she engaged in conduct protected by Title VII; (2) after or contemporaneous with engaging in that conduct, her employer took a "materially adverse" action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Phillips v. Potter, No. 07-815, 2009 WL 1362049, at *2 (E.D. Pa. May 14, 2009) (citing Hare v. Potter, 220 F. App'x 120, 127 (3d Cir. 2007); Moore, 461 F.3d at 340–4; see also Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 67–68. I first note that Defendant does not seek to dismiss Plaintiff's hostile work environment claim based on race. In addition, for reasons similar to those discussed in this Section, I find that Plaintiff has plausibly pled a materially adverse action based on being assigned to work with one of the co-workers who called her the n-word after repeatedly reporting that co-worker's conduct to Defendant and filing an EEOC Charge based on it.

to handle tire pressure was materially adverse, so much so that a reasonable person in the circumstances would be dissuaded from filing or supporting a charge of discrimination. For example, there are no facts alleged regarding how long Plaintiff was assigned to handle tire pressure, whether it was a "one-off" assignment or a permanent one, and, more importantly, if the tire pressure assignment was thought of as a demotion or a less desirable task. In fact, Plaintiff does not allege what her current position is with Defendant, what other positions she may have held with Defendant, what tasks she had previously been assigned, and if those previous assignments were objectively better than the tire pressure assignment. See id.

Additionally, even assuming that Plaintiff has adequately pled an adverse employment action, I find that Plaintiff has not plausibly established that she opposed or participated in proceedings against unlawful pregnancy discrimination. The Third Circuit has held that the anti-retaliation provision of Title VII, "'protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII.'" Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC, No. 17-2000, 2019 WL 1493342, at *8 (M.D. Pa. Mar. 31, 2019) (quoting Moore, 461 F.3d at 341.) "Protected activity for a retaliation includes 'not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management." Id. (quoting Daniels v. Sch. District of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015)). "The plaintiff's complaint 'must allege that [her] opposition was to discrimination based on a protected category' and the plaintiff must have an 'objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute.'" Id. (quoting Daniels v. Sch. District of Philadelphia, 776 F.3d 181, 193–4 (3d Cir. 2015)).

As mentioned, Plaintiff alleges that a co-worker, Errigo, bumped into her purposefully in the bathroom while she was pregnant. There is no allegation to plausibly support that this alleged conduct was related to her pregnancy. In other words, there are no facts pled to plausibly show that Plaintiff was bumped by this co-worker because she was pregnant or that the co-worker, Errigo, had a discriminatory motive based on her pregnancy. At this point, Plaintiff's allegations more likely support that the co-worker's actions in the bathroom were motivated by her race based on Plaintiff's past history with this co-worker and her granddaughter. Thus, Plaintiff fails to plausibly plead that she had an objectively reasonable belief that the activity she reported constituted unlawful discrimination based on her pregnancy.[7] To the extent Plaintiff's retaliation claims (Counts III, IV, VIII, IX, XII, and XIII) are based on her pregnancy, they are dismissed.

## I. FMLA Retaliation

Finally, regarding Plaintiff's FMLA retaliation claims, Defendant argues that Plaintiff has failed to plausibly plead an adverse employment action and a causal relationship between the adverse employment action and Plaintiff's leave. Plaintiff alleges that she applied for FMLA leave

---

[7]     It is not clear whether Plaintiff asserts that the verbal and written discipline she was issued were in retaliation for reporting the bathroom incident. The chronology in the Amended Complaint is difficult to discern. To the extent that Plaintiff seeks to rely on the discipline as evidence of retaliation in this context, for the same reasons discussed in this Section, such a claim fails because Plaintiff has not adequately pled that she opposed or participated in proceedings against unlawful pregnancy discrimination.

Similarly, Plaintiff also appears to allege that being assigned twice to work with Sireci, the co-worker who had called her the n-word, was retaliatory harassment for reporting pregnancy discrimination. Unlike her retaliatory harassment claims based on race, Plaintiff's retaliatory harassment claims based on her pregnancy must be dismissed because she has failed to plausibly plead that being assigned to work with Sireci twice (not the co-worker that bumped Plaintiff in the bathroom) was materially adverse, so much so that a reasonable person in the circumstances would be dissuaded from filing or supporting a charge of pregnancy discrimination. This claim also fails because, again, Plaintiff has not adequately alleged that she had an objectively reasonable belief that the bathroom incident constituted unlawful pregnancy discrimination.

due to her high-risk pregnancy and for her son's medical conditions, including asthma, allergies, and eczema. Plaintiff claims that she was issued verbal and written discipline and was called into the office regularly in contemplation of issuing discipline, "including for absences related to medical needs." (Am. Compl. ¶¶ 45–46.) Plaintiff appears to claim that being disciplined for absences related to her medical needs qualifies as an adverse employment action. Like a claim of discrimination, an adverse employment action under the FMLA is an action that alters the employee's compensation, terms, conditions, or privileges of employment, deprives her of employment opportunities, or adversely affects her status as an employee. Budhun v. Reading Hosp. and Med. Ctr., 765 F.3d 245, 257 (3d Cir. 2014). For the same reasons discussed above in Section III.D regarding Plaintiff's discrimination claims, Plaintiff's allegation that she was disciplined and called into the office in contemplation of discipline for absences related to her medical needs does not plausibly plead that her employment status with Defendant was adversely affected or altered in any material way.[8] Thus, Defendant's motion is granted as to Counts XV and XVI.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted as to the following claims: (1) all claims for punitive damages in Counts X, XI, XII, XIII, and XIV; (2) Counts II, VI, VII, XI, and XIV; (3) Counts III, IV, VIII, IX, XII, and XIII, to the extent they are based on pregnancy; and (4) Counts XV and XVI. Defendant's motion is denied as to (1) Counts I and V and (2) Counts III, IV, VIII, IX, XII, and XIII, to the extent they are based on race.

An appropriate Order follows.

---

[8] Plaintiff's attempt to assert an adverse employment action based on her assignment to tire pressure and being assigned to work with Sireci twice similarly fail. See supra Section III.D.